UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLUE RIBBON COMMODITY TRADERS, INC., | CIVIL ACTION |
| Plaintiff | No. 07-4122 |
| v. | |
| PROGRESSO CASH & CARRY, | |
| Defendant. | |

## MEMORANDUM

Now before the court is defendant Progreso Cash & Carry's[1] ("Progreso") Motion

for Summary Judgment.[2]

## I.

This is a breach of contract action stemming from a dispute between Blue Ribbon

Commodity Traders, a purveyor of meat products, and Progreso Cash & Carry, a

wholesale grocery business. The essence of the dispute is as follows: In order to stock its

grocery stores, Progreso purchased meat products from wholesaler Blue Ribbon. Blue

---

[1] Defendant's correct name is "Progreso Cash & Carry" not "Progresso Cash & Carry."

[2] This court has jurisdiction under 28 U.S.C. § 1332 based on the diversity of the parties and the amount in controversy, which exceeds $75,000. Blue Ribbon is a Pennsylvania Corporation and Progreso is a Puerto Rican corporation.

Ribbon alleges that Progreso has failed to pay for two orders of chicken and two orders of

pastrami amounting to $175,746.73.[3] As alleged in the complaint, that amount consists of

---

[3] The parties dispute what orders are properly a part of this civil action. The first disputed transaction relates to Blue Ribbon invoice number 28901, amounting to $1,081.93 (also for chicken). Defendant contends that this is a "new claim, never raised before in this action." Def. Reply Def. Sup. Mot. Sum. J. 8 n.7. Defendant is incorrect. The claim arising under invoice number 28901 is properly before this court. The complaint states that "[d]efendant owes Plaintiff [$175,746.73] for food products (the "Food Products") sold and delivered by Plaintiff to Defendant between April 1, 2005 and November 22, 2006 - all as set forth in the Invoices from Plaintiff to Defendant collectively annexed hereto as Exhibit A and Incorporated herein by reference." Exhibit A includes invoice number 28901 (dated February 13, 2006) billing Progreso for $13,517.36 for chicken legs pursuant to order 01-13144 with the numbers "1081.39" written and circled next to the words "still owed. Thus, invoice 28901, was attached to the complaint as part of Exhibit A and was part of plaintiff's assertion in the complaint that defendant owed plaintiff $ 175,746.73." It is not a "new claim." Because defendant's summary judgment motion does not point to any facts showing that plaintiff could not meet its burden of proof on this claim, summary judgment will be denied with regard to invoice number 28901.

The second disputed transaction relates to Blue Ribbon invoice number 4000, which charges Progreso $62,290.80 for delivery of 51,480 pounds of chicken meat. Blue Ribbon first raised this claim in its memorandum of law in opposition to defendant's motion for summary judgment explaining that "[s]ince the filing of the complaint, Blue Ribbon has discovered another transaction in which Defendant . . . failed to pay [for Blue Ribbon food products." Pl. Mem. Opp. Def. Mot. Sum. J. 1 n.1. Progreso contends that this is a "new claim" which cannot be now brought before this court. Def. Reply Def. Sup. Mot. Sum. J. 8 n.7. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)." Although leave to amend "shall be freely given," Blue Ribbon has not, and apparently does not seek to, amend its complaint. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir.2008) (quotations omitted). In other words, "[f]ederal pleading standards do not allow a party "to raise new claims at the summary judgment stage." *DeWees v. Haste*, 620 F.Supp.2d 625, 635 n.7 (M.D.Pa.2009) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir.2004)). The claim arising under invoice number 4000 was not part of the complaint and thus it not properly before this court. Blue Ribbon argues that, because that invoice was exchanged during the discovery process and defendant received that invoice prior to filing their motion for summary judgment, Blue Ribbon can now seek payment of that amount in this civil action. Pl. Surreply Sum. J. 12. To the extent that Blue Ribbon argues that Progreso had "fair notice" of that claim, I also disagree. The complaint identified the invoices it sought payment for, which did not include invoice number 4000. The fact that the invoice was exchanged during the

outstanding bills from the following purchases:

| Date | Product | Purchase Order | Blue Ribbon Invoice Number | Amount |
|---|---|---|---|---|
| April 6, 2005 | chicken | T4157 | 26179 | $ 50,760 |
| Feb. 13, 2006 | chicken | 01-13144 | 28901 | $ 1081.39 |
| Nov. 22, 2006 | pastrami | 08-14437H | 30841 | $ 14,155.34 |
| Nov. 22, 2006 | pastrami | 07-14470 | 30842 | $ 109,750 |
| | | | Total | $ 175,746.73 |

In its defense Progreso maintains that: (1) it did not order the pastrami from Blue Ribbon and (2) it paid for all the chicken products that it ordered and received.

Blue Ribbon commenced this action against Progreso on October 1, 2007. On October 29, 2007 plaintiff Blue Ribbon filed a request for entry of default and default judgment pursuant to F.R.C.P. 55(b) in the amount of $175,746.73 plus costs. The court entered default judgment in favor of Blue Ribbon for that amount on October 30. On

---

discovery process does not give defendant "fair notice" that it was part of the action. *See Haynes v. Smith*, No. Civ. 03-3080, 2006 WL 543645 (March 2, 2006, D.N.J.) (plaintiff barred from raising new claims even though issue was raised during depositions because "questions during deposition are not a substitute for amending the complaint").

November 5, 2007, defendant Progreso filed a motion to set aside and vacate the order of default and default judgment, which the court granted on July 23, 2008. On August 6, 2007, Progreso filed their answer to the complaint. On October 23, 2009, Progreso filed this motion for summary judgment. Blue Ribbon responded on December 4, 2009. On December 18, 2009 Progreso filed a reply motion in support of summary judgment, and Blue Ribbon filed a sur-reply on December 23, 2009.

### A. Chicken Purchase Orders T-4153, T-4157 and 03-11178

The parties have submitted evidence relating to three different orders of frozen, boneless, skinless chicken thigh meat identified as purchase orders T-4153, T-4157, and 03-11178. The first order of chicken, T-4153 is not at issue. The evidence shows, and the parties do not dispute, that Progreso ordered, received, and paid for that order of chicken.

The second order at issue in this case is another order of 1,350 units of frozen, boneless skinless chicken thighs known as purchase order T-4157. Def. Ex. 22. The record shows the following: (1) Progreso ordered the chicken from Blue Ribbon; (2) the chicken was picked up by a company called Whoops Transport which delivered the product to Florida, where it would then be shipped to Puerto Rico; (3) a company named Sea Star Line shipped the chicken to San Juan; and (4) a different company, Marroig

Transport, delivered the chicken to Progreso once in Puerto Rico.[4]

On April 6, 2005, after the chicken was delivered to Progreso, Blue Ribbon issued invoice number 26179, which billed Progreso $50,760 for purchase order T-4157. Def. Ex. 26. On April 15, Progreso issued a check (numbered 016902) to Blue Ribbon for $112,179.68. Def. Ex. 27. According to Progreso internal records, check number 016902 was used to pay for two Blue Ribbon invoices: number 25802, dated February 25, 2005, for $61,419.68, and number 26028, dated March 29, 2005, for $50,760. Def. Ex. 27.

The third order of chicken at issue in this case is purchase order number 03-11178, also for 1,350 units of frozen, boneless skinless chicken thigh meat. Sometime in March 2005, Blue Ribbon prepared an internal worksheet for that purchase order number showing that Progreso had ordered 1,350 units of frozen, boneless skinless chicken thighs and would be billed $50,760 for that order pursuant to invoice number 26028. Def. Ex. 28. The worksheet also showed that the product would be shipped on March 11 and

---

[4] According to an internal worksheet prepared by Blue Ribbon documenting the transaction, Progreso ordered 1,350 units of frozen, boneless skinless chicken thighs–to be billed in invoice number 26179–for $50,780. Def. Ex. 22. The worksheet also showed that the chicken would be shipped on April 1, 2005. Def. Ex. 22. An invoice prepared by Whoops Transport (Whoops Invoice No. 25060) dated March 24, 2005 shows that purchase order T-4157 was loaded in Jacksonville with a destination of Puerto Rico. Def. Ex. 23. The chicken was shipped in container number NPRU 596372-3 on the vessel "Crusader." Def. Ex. 23. The invoice stated that the consignee for the delivery was Progreso. Def. Ex. 23. A bill of lading from the shipping company, Sea Star Line, LLC., shows that container NPRU 596372-3 was loaded in "Jacksonville, FL" with a destination of "San Juan, Puerto Rico." Def. Ex. 24. That bill of lading also contains the following relevant information: March 24, 2005 as the date, purchase order T-4157, "Progreso" as the "consignee" and Blue Ribbon as the "sales agent." Def. Ex. 24. An invoice prepared by Marroig Transport shows that Marroig was hired to transport container number NPRU 596372-3 from San Juan to Progreso's place of business in Ponce. Def. Ex. 25.

delivered by March 21.  Def. Ex. 28.  On March 11, Whoops Transport issued an invoice

to Blue Ribbon for transporting purchase order 03-11178 to the port from which it would

then be shipped to Puerto Rico in container HRZU-580617.  Def. Ex. 31.  The Whoops

Transport invoice for that order identified the consignee as "Jose Santiago, Inc" located in

Bayamon, Puerto Rico.  Def. Ex. 31.  A bill of lading from HorizonLines LLC shows that

purchase order 03-11178/container HRZU-580617-5 was shipped to Puerto Rico on a

vessel named "Hawaii" for consignee "Jose Santiago/Road #5 KM 4.4/Industrial Zone

Luchetti/Bayamon/PR."  Def. Ex. 30.  On March 21, Blue Ribbon issued invoice number

26028 to Progreso.  Def. Ex. 29. That invoice–which is marked "PAID" and stamped with

the date April 15, 2005–sought payment of $50,760 for 1,350 pieces of chicken delivered

pursuant to purchase order 03-11178.  Def. Ex. 29.

Blue Ribbon now argues that Progreso received three orders of chicken–under

purchase orders T-4153, 03-11178 and T-4157 –but that it only paid for the first two.

Progreso, on the other hand, submits that it never received the chicken identified purchase

order 03-11178.  It believes that purchase order 03-11178 was sold and delivered to Jose

Santiago, an unrelated third party.  Progreso maintains that it only ordered and received

two orders of chicken, T-4153 and T-4157, which were billed, respectively, in invoices

26091 and 26179.  However, Progreso concedes that it mistakenly referenced  invoice

number 26028 (which is in fact the bill for purchase order 03-11178) when it issued the

check for $112,179.68, although it in fact intended to pay Blue Ribbon for purchase order

T-4157/invoice 26179. For that reason, Progreso submits, Blue Ribbon claims that Progreso still owes it for purchase order T-4157/invoice 26179.

## B. Pastrami Order 09-14470

Blue Ribbon also contends that Progreso has failed to pay for an order of 54,000 pounds of pastrami. The record shows that Blue Ribbon originally ordered the product, which consisted of 51,000 pounds of flat round pastrami and 3,000 pounds of sliced pastrami, from Beef International on or near September 7, 2006. Def. Ex. 2.n.; Def. Ex. 4.[5] A bill of lading from Whoops Transport reflects that purchase order 09-14470 was packaged in container CMCU-550116-6 and transported to Blue Ribbon on behalf of Beef International. Def. Ex. 4. Crowley Liner Services then received the container from Whoops Transport and shipped it from Pennsauken, New Jersey to San Juan, Puerto Rico. Def. Ex. 5. The Crowley Liner Services bill of lading identified the "consignee" as Blue Ribbon Commodity Traders, located in Juana Diaz, Puerto Rico. Def. Ex. 5. On October 30, 2006, Beef International issued Blue Ribbon invoice number 99468 charging $81,840 for 51,000 pounds of flat round pastrami and 3,000 pounds of sliced pastrami pursuant to purchase order 09-14470. Def. Ex. 6.

---

[5] A confirmation fax from Blue Ribbon to "Frank Blazer" at Beef International dated September 7, 2006 shows that Blue Ribbon ordered a "full load (54,000 pounds) of Fresh Whole Pastrami" in purchase order 09-14470. Def. Ex. 2. The order consisted of 51,000 pounds of flat round pastrami and 3,000 pounds of sliced pastrami. Blue Ribbon's order was further confirmed by Beef International's issuance of a "sales order" on September 8 to Blue Ribbon for customer purchase order 09-14470. Def. Ex. 3.

According to the testimony of Daniel B. Naab, a sales manager at Beef International, sometime in November, Beef International learned that Blue Ribbon was experiencing financial difficulties and decided to repossess the pastrami. Def. Ex. 9 (deposition p.9). On November 20, 2006, Naab traveled to Blue Ribbon's office in Fort Washington, Pennsylvania and spoke with three Blue Ribbon employees, who assured him that they were "working everything out" with regards to their "credit problems." Def. Ex. 9 (deposition p.17). Nevertheless, Naab was then informed by his supervisor that the company should cancel the order and take possession of the pastrami. Def. Ex. 9 (deposition p.18). Naab testified that at the meeting with Blue Ribbon employees, he wrote a "credit" to Blue Ribbon with a November 20 date. Def. Ex. 9 (deposition p.18-23). However, when one of the persons at the meeting asked him to backdate the credit to October 30, he did. Def. Ex. 9 (deposition p.18-23). That document appears in the record as defense exhibit six. The pastrami was then transferred from Commonwealth Cold Storage, where it was being kept, to Popaco Enterprises, a different storage company. Def. Ex. 9 (deposition p. 23; 30).[6]

---

[6] Popaco issued two invoices (both dated December 4, 2006) to Beef International for the transport and storage of "Lot No. 09-11470;" the first invoice billed $734.61 for transporting and storing 25,686 pounds of pastrami, and the second invoice billed $1,074.64 for transporting and storing 24,287.54 pounds of pastrami. Def. Ex. 10. A "withdrawal" form dated November 11, 2006 from Commonwealth Cold Storage Inc., shows that the pastrami was removed from storage by "Transporte Juan Rivera/Popaco/Bayamon. Def. Ex. 8. Popaco's bill of lading (dated December 8, 2006) states that part of lot 09-14470 (32,821 pounds of pastrami), was delivered to Progreso. Def. Ex. 13.

Beef International then sold part of the repossessed pastrami to "a number of people down in Puerto Rico" including defendant Progreso. Def. Ex. 9 (p. 25 of deposition). On December 11, 2006, Beef International issued an invoice to Progreso $64,910.44 for the sale of lot 09-11470. Def. Ex. 12. The invoice is stamped "paid" with the date January 3, 2007. Def. Ex. 12. The record also reflects this payment in a check (number 021540) dated January 3, 2007 for $64,9010.44 issued by Progreso to Beef International and deposited by Beef International. Def. Ex. 14.

The dispute arose when Blue Ribbon charged Progreso for the sale of two orders of pastrami: $14,155.34 for the sale of 7,569.70 pounds (400 cases) under purchase order number 08-14437H, and $109,750 for the sale of 58,689.84 pounds (3102 cases) of pastrami under purchase order number 07-14470. Blue Ribbon contends that Progreso received this pastrami but failed to pay for it.[7] In its defense Progreso counters that it

---

[7] Blue Ribbon hangs its hat in large part on what it calls a "judicial admission" by Progreso that it "picked up" the pastrami from Commonwealth Storage. The relevant part of the statements, contained in Progreso' reply brief in support of its motion to set aside the default judgment are as follows: "Progreso paid for 2300 cases of pastrami by check number 021540 in the amount of $64,910.44 . . . Blue Ribbon authorized a deductible of $500 since Progreso picked up the merchandise. The withdrawal document number 217720 . . . reveals that some merchandise was transported by a driver from Popaco's Transport in Bayamon, Puerto Rico, but it does not show to whom the merchandise was finally delivered."

Progreso's statement that it "picked up" the pastrami is not a judicial admission. Judicial admissions are "formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Parilla v. IAP Worldwide Serv., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004). "To be binding, admissions must be unequivocal." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 377 (3d Cir. 2007). In this case, the statement was not the result of a request for a formal concession. Second, the statement cannot be said to be an unequivocal assertion. The very next sentence reveals this ambiguity. In subsequent briefs, Progreso clearly states that it did not pick up the pastrami from the storage, but rather that the

purchased the pastrami from Beef International, and that the record does not show that

Progreso ever ordered, received, or accepted, any pastrami from Blue Ribbon, and thus

that Blue Ribbon could not satisfy its burden at trial.

## II.

Defendant now moves for summary judgment. Pennsylvania law requires that a

plaintiff seeking to proceed with a breach of contract action establish the following: (1)

the existence of a contract, including its essential terms, (2) a breach of a duty imposed by

the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 226

(3d Cir. 2003).

Summary judgment is appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it

"bear[s] on an essential element of the plaintiff's claim." *Abraham v. Raso*, 183 F.3d

279, 287 (3d Cir.1999). A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Josey v. John R.*

*Hollingsworth Corp.*, 996 F.2d 632, 637 (3d.Cir.1993) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a summary judgment motion, the

---

invoice and bill of lading from Popaco show that Popaco picked up the pastrami on Beef
International's behalf.

court "must accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir.2009).

The moving party bears the burden of informing the court of the basis for its motion and identifying the portions of the record that show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where . . . the non-moving party bears the burden of proof at trial, summary judgment is appropriate if non-movants fail to "make a showing sufficient to establish the existence of an element essential to [their] case." *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996) (quoting *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993)). Thus, in this case, the non-moving party, Blue Ribbon, who bears the burden of proof at trial, "must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.' " *In re TMI*, 89 F.3d at 1116 (citing *Celotex*, 477 U.S. at 324).

### A. Chicken Purchase Orders T-4157, 03-11178, and 28901

In this case, there are sufficient questions of material fact to preclude summary judgment as to whether Progreso breached its obligation to pay Blue Ribbon for purchase order T-4157. The evidence shows–and Progreso concedes–that Progreso ordered a shipment of chicken marked as purchase order T-4157. On April 6, Blue Ribbon issued invoice number 26179 for $50,760 for purchase order T-4157. Progreso claims that it

- 11 -

paid that invoice, but when it did so, it accidentally referenced to a different invoice number 26028. That invoice corresponded to purchase order 03-11178 and not purchase order T-4157, which Progreso contends it intended to pay. The question of whether a "clerical error" caused this discrepancy and what Progreso actually intended to do should be left for the jury. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. Particularly where "resolution of the dispositive issues requires a determination of state of mind," the court "should be cautious in granting a motion for summary judgment " and allow "the jury . . . to observe the demeanor, during direct and cross-examination, of the witnesses whose states of mind are at issue. *Owens v. City of Philadelphia*, 6 F.Supp.2d 373, 386 n. 10 (E.D.Pa.1998) (citations omitted).

Progreso submits that purchase 03-11178, was delivered to a third party, "Jose Santiago, Inc." and that it does not owe Blue Ribbon anything for that order of chicken. Progreso points to two pieces of evidence in the record–the bill of lading and the Whoops Transport invoice–as showing that order 03-11178 was intended for and delivered to consignee "Jose Santiago, Inc." In Progreso's view, these documents confirm that Blue Ribbon would not be able to meet its burden of proof at trial of showing that Progreso received that order of chicken. I disagree. There is evidence suggesting that Progreso in fact submitted *three* orders of chicken, (purchase order T-4153, T-4157, and 03-11178): a Blue Ribbon worksheet dated March 11, 2005 refers to Progreso as the customer for

purchase order 03-11178 and invoice 26028.  Thus, this discrepancy precludes the grant

of summary judgment.  I find that a genuine issue of material fact exists as to whether

Progreso ever (1) ordered the chicken identified in purchase order 03-11178; (2) received

that order of chicken; or (3) whether the chicken was in fact delivered to "Jose Santiago"

and whether that would mean that Progreso was not liable for the amount charged in

invoice 26028.

### B.  Pastrami Order 09-14470

Summary judgment is appropriate as to the claims arising under pastrami order 09-

14470 because the evidence in the record can not show the existence of a contract

between Blue Ribbon and Progreso for the pastrami at issue.  There is no evidence that

Progreso ordered any pastrami from Blue Ribbon, that Blue Ribbon delivered any

pastrami to Progreso, or that Progreso accepted an order of pastrami from Blue Ribbon.

Even in the light most favorable to Blue Ribbon, the evidence shows only that: (1) a

contract existed between Blue Ribbon and Beef International for 54,000 pounds of

pastrami; (2) Beef International reneged on that contract by improperly cancelling the

order; (3) Beef International repossessed the pastrami; (4) Beef International sold a

portion of the pastrami to Progreso; and (5) Progreso paid Beef International for that

order of pastrami.  The evidence in the record reveals the existence of a dispute between

Beef International and Blue Ribbon about, apparently, whether the order was properly

cancelled.  That dispute need not be resolved in order for the court to grant summary

judgment on this issue.

### III.

For these reasons, defendant's motion for summary judgment is granted with regards to the claim for pastrami and denied in part with regards to the claim for chicken. An appropriate order accompanies this memorandum.