UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLUE RIBBON COMMODITY
TRADERS, INC.,

        Plaintiff

v.

PROGRESO CASH & CARRY,

        Defendant.

CIVIL ACTION

No. 07-4122

Pollak, J.                                                                                                            May 17, 2011

## OPINION

Now before the court is plaintiff Blue Ribbon Commodity Traders, Inc.'s ("Blue Ribbon") Motion to Amend the Complaint (Docket No. 64), which defendant Progreso Cash & Carry ("Progreso") opposes (Docket No. 67). A flurry of additional documents is also before the court: plaintiff's reply (Docket No. 70); defendant's surreply (Docket No. 72); and plaintiff's sursurreply (Docket No. 73).[1]

**I.**

This long-running breach of contract action stems from a dispute between Blue

---

[1] The court notes that leave was granted only to the filing of plaintiff's reply (*see* Docket No. 69). The parties are admonished to refrain from burdening the court with redundant paperwork that does little to aid the court's resolution of the motion.

Ribbon , a purveyor of meat products, and Progreso, a wholesale grocery business.[2] At issue in the present motion to amend is an invoice between the parties, invoice number 40000.

Invoice number 40000 was created in late 2007, some time after the complaint was filed. Though dated January 2, 2007, the invoice claims that defendant Progreso owes plaintiff Blue Ribbon $62,290.80 for chicken thigh meat that was shipped on June 11, 2004. (*See* Docket No. 64, Exh. B.) Plaintiff claims to have sent this invoice to defendant at the end of 2007. Regardless of whether it was or was not sent, no claim was made in this action with respect to this invoice at the time or at any point in 2007 or 2008.

Plaintiff alleges that invoice number 40000 was first raised in this suit during an April 8, 2009, settlement conference before Magistrate Judge M. Faith Angell, and a copy of the invoice was given to defendant's former counsel soon thereafter.[3] An additional copy was sent to defendant's present counsel on October 1, 2009. Notwithstanding the transmission of copies of invoice number 40000, an amendment to the complaint was not sought at any point in 2009.

The legal claim resulting from invoice number 40000 was first brought to this court's attention in late October 2009 in defendant Progreso's first motion for summary

---

[2] The court will restrict the history of this case to the pertinent facts related to the motion to amend. For a more detailed recitation of the underlying facts, see this court's August 4, 2010, memorandum. (Docket No. 60.)

[3] Defendant switched from former counsel to present counsel in September 2009.

2

judgment and plaintiff's opposition thereto.  (*See* Docket Nos. 54, 57.)  In resolving the motion for summary judgment in August 2010, the court noted that invoice number 40000 was a new claim not covered by the complaint filed in October 2007.  (*See* Docket No. 60 at 2 n.2.)  Moreover, there was no motion to amend the complaint to include invoice number 40000 prior to the summary judgment stage.  Accordingly, Blue Ribbon was barred from raising the claims related to invoice number 40000 at that time.

Following the disposition of the first motion for summary judgment, on September 17, 2010, the parties filed a joint pretrial memorandum for the pretrial conference held on September 23, 2010.  Two days before the conference, on September 21, 2010, plaintiff filed this motion to amend the complaint to include invoice number 40000, nearly three years after the complaint was filed and only after discovery, disposition of a motion for summary judgment, the scheduling of a pretrial conference, and the submission of a joint pretrial memorandum.  After extensive briefing, the matter is ripe for disposition.

## II.

### A. Motions to amend

A motion to amend the complaint is made pursuant to Federal Rule of Civil Procedure 15.  Because the present motion is opposed and does not fall within the provisions for amendment as of right, leave of court is required.  Fed. R. Civ. P. 15(a)(2). This court "freely give[s] leave when justice so requires."  *Id.*

In determining whether leave should be given, the court examines whether there

3

was "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court." *Id.*; *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (holding that while "the liberal pleading philosophy of the federal rules does limit a district court's discretion to deny leave to amend," the "[d]istrict courts are the experts in the field of applied trial procedure" (internal quotation marks omitted)).

The Third Circuit "has interpreted [the *Foman*] factors to emphasize that prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (internal quotation marks omitted). The non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely. *Id.* "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Delay alone, however, will not constitute grounds for denial. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

## B. Prejudice

Plaintiff's complaint expressly alleges the following: "Defendant owes Plaintiff . . . for food products . . . sold and delivered by Plaintiff to Defendant between April 1, 2005[,] and November 22, 2006—all as set forth in the Invoices from Plaintiff to Defendant collectively annexed hereto as Exhibit 'A' and incorporated herein by reference." Compl. ¶ 4. Exhibit A contained four invoices, all of which were in the 4/1/2005-11/22/2006 timeframe. (*See* Docket No. 1, Exh. A.) Invoice number 40000 was not included amongst the four invoices in the exhibit.

Plaintiff claims that it became aware of the shipment at issue in invoice number 40000 after filing the complaint in October 2007. Plaintiff admits that, though it was aware of the invoice in 2007 and discussed it with defendant in 2009, it did not seek to amend its complaint until late 2010. Moreover, plaintiff admits (and invoice number 40000 confirms) that the shipment at issue was shipped on June 11, 2004, and was not invoiced until late 2007. The shipment date and the invoice date are both outside of the express time frame alleged in the complaint.

Throughout the discovery process, plaintiff maintained that the scope of this civil action was limited to the specific invoices attached to the complaint. Indeed, plaintiff reiterated this narrow scope twice in late 2008, well after plaintiff created invoice number 40000 and became aware of the alleged debt. *See* Docket No. 67, Exh. F, at 4 (Pl. Resp. to Interrogatory No. 3, Oct. 21, 2008) ("For the identity of the 'food products', see

Exhibit 'A' to the COMPLAINT containing copies of the Invoices which are the subject matter of this Civil Action."); Docket No. 30 at 4 (Pl. Opp. to Def. Mot. for Extension of Fact Based Discovery Deadline, December 22, 2008) ("It is important to remember that this is a collection case for Food Products sold and delivered by Blue Ribbon to Defendant between April 1, 2005[,] and November 22, 2006. . . . It is as simple as that!"). Moreover, in reliance on this representation, Judge Angell declined to extend the deadline for fact discovery. (*See* Docket No. 33.) There is no persuasive reason why plaintiff should now be permitted to amend its complaint to include invoice number 40000 when plaintiff in 2008 was at pains to make clear that its claim was confined to a limited timeframe—April 1, 2005, to November 22, 2006—long after the claimed June 11, 2004, shipment of chicken thigh meat, an asserted transaction not memorialized as invoice number 40000 until 2007. It would be prejudicial to defendant to force them to defend a claim that plaintiff repeatedly sought to disavow and only belatedly sought to graft on to this suit.[4]

Were the prejudice to defendant not reason enough to deny the motion to amend, undue delay also counsels in favor of denying the motion. The passage of time works

---

[4] Plaintiff also argues that defendant knew of the claim all along, and thus would not be prejudiced. This would not change the analysis. Even assuming *arguendo* that defendant was aware of the invoice since it was created, the problem is that plaintiff went out of its way in 2008 to disavow any and all claims not based on the invoices attached to the complaint, only to seek to assert a claim based on invoice number 40000 years later in a very belated motion to amend.

against plaintiff here—plaintiff discovered the allegedly unpaid order in late 2007, but did not attempt to bring it to this court's attention until the summary judgment stage in late 2009 (which, as discussed, is not a proper way to raise a new claim). Regardless of any delay since 2009, the nearly two-year delay between discovery and (improper) assertion, accompanied by interim reassurances that the only claims being brought were those related to the invoices in Exhibit A, is undue.

Plaintiff now contends that it "believed (and still believes) it is *not* necessary for [plaintiff] to amend the Complaint to include Invoice #40000" because it is "part of the unsettled open account between" plaintiff and defendant. (Docket No. 70 at 5 (emphasis in original).) Yet nowhere in the complaint is there an allegation of an "unsettled open account." Nor is there any reference to such an account in plaintiff's motion to amend.[5] Plaintiff had never before alleged that there was an unsettled open account with an unpaid balance; quite the contrary, this civil action was, in plaintiff's own words, limited exclusively to the four invoices from 2005 and 2006 included as Exhibit A to the complaint. To quote the plaintiff: "It is as simple as that!" It would fundamentally

---

[5] The court notes that this allegation first appears in a court-permitted *reply* to defendant's opposition to the motion to amend. While it might be considered as a response to assertions made in defendant's opposition, the issue of an unsettled open account is a brand new issue to this case. However, "a reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues." *United States v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006). This alone would provide sound reason to reject the theory.

change the nature of this action to recast the dispute from one over discrete invoices to one over the entirety of amounts owed under an "unsettled open account" theory (an issue on which no discovery has been taken).

**III.**

Although leave to amend is typically granted freely, plaintiff's motion to amend the complaint is, for the foregoing reasons, denied. An appropriate order accompanies this memorandum.